IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUZANNE LAVENDER,<br>                    **Plaintiff,**<br><br>        v.<br><br>**EXPERIAN INFORMATION**<br>**SOLUTIONS, INC.,**<br>                    **Defendants.** | CIVIL ACTION<br><br><br><br><br>NO.  21-4739 |

## <u>MEMORANDUM OPINION</u>

Plaintiff Suzanne Lavender Complaint—filed on October 27, 2021 against Defendant

Experian Information Solutions, Inc. ("Experian") pursuant to the Fair Credit Reporting Act

("FCRA"), 15 U.S.C § 1681, *et seq.*—asserts that Experian reported inaccurate information on

her credit report related to her account with Capital One Bank USA, N.A. ("Capital One").[1]

Specifically, Plaintiff alleges that someone stole and made fraudulent charges on her Capital One

credit card in 2015 and that thereafter Experian reported inaccurate information about the

account in her credit report.

Plaintiff claims are that Experian failed to follow reasonable procedures to ensure the

accuracy of information in its credit reporting in violation of 15 U.S.C. § 1681e(b); failed to

conduct a reasonable reinvestigation of information related to her Capital One account after she

disputed the accuracy of Experian's reporting in violation of 15 U.S.C. § 1681i; and failed to

block the allegedly inaccurate information from being reported in violation of 15 U.S.C. §

1681c-2.

Plaintiff moves for summary judgment only in respect to her Section 1681c-2 claim.

---

[1] The parties previously stipulated to dismiss Capital One as a Defendant in this action.

Defendant Experian moves for summary judgment in respect to all three of Plaintiff's FCRA claims.  For the reasons below, Experian's motion shall be granted and Plaintiff's shall be denied.

## I.  FACTUAL BACKGROUND

### A.  Capital One Account

Plaintiff's Capital One account was opened in 2014.  She maintains that her Capital One credit card was stolen on January 8, 2015 and that she filed a police report on the same day with an Officer "Wilson" of the South Coatesville Police Department in Pennsylvania.  Nevertheless, she has not produced the original police report.  An incident blotter and daily log report from the South Coatesville Police Department, which she did provide, refer to an incident during which one Officer Todd Olin responded to a "Domestic" issue on January 8, 2015 at Plaintiff's residence—according to a declaration by the current Police Chief of the Borough of South Coatesville Police Department, Kevin Pierce.  The documents do not clearly reference the alleged theft of Plaintiff's credit card or specifically mention identity theft.

Following the incident, Plaintiff claims that fraudulent charges were made to her Capital One card.  She subsequently missed six consecutive account payments, and Capital One charged off the debt in July 2016.  Experian continued to report the charged-off Capital One account in Plaintiff's credit file.

### B.  First Dispute

Plaintiff first sent a dispute regarding the reporting of her Capital One account to Experian on May 1, 2018, more than three years after the incident.  This initial dispute did not mention identity theft or allege fraudulent charges were made on her Capital One account.  Instead, it listed a series of accounts, including the Capital One account, and stated: "[t]hese

disputed accounts were claimed to have been accurate or verified.  These accounts are still inaccurate and need to be corrected or deleted immediately."

Experian sent Plaintiff's dispute to Capital One, and Capital One verified the account as accurate.  On May 30, 2018, Experian mailed a copy of the dispute results to Plaintiff, which showed that her Capital One account amount remained on her Experian credit report.

### C.  First Dispute Alleging Identity Theft

More than a year later, on August 20, 2019, Plaintiff sent another dispute to Experian stating that "[a] few years ago I was the victim of [i]dentity [t]heft and the following account was reported as collections accounts despite the fact that I thought I had resolved the issue with Capital One."  Experian received the dispute on August 25, 2019.

Attached to the dispute letter are a copy of Plaintiff's social security card and two pages of a report filed with the Federal Trade Commission ("FTC"), entitled the "Identity Theft Victim's Complaint and Affidavit" ("FTC Affidavit").  The two pages include Plaintiff's personal information but do not include the "Law Enforcement Report" section of the affidavit form, as discussed further *infra*.

Experian sent a response letter stating that "[i]n order to have the requested information removed from your personal credit report, you must send us a copy of a recent valid identity theft report (an official report filed with an appropriate federal, state, or local law enforcement agency, including the Federal Trade Commission or the U.S. Postal Inspection Service or others, the filing of which subjects the person who filed the report to criminal penalties if the information filed is false)."  The letter also requested Plaintiff to send "all pages of the identity theft report, including validation that the report was filed with a federal, state or local law enforcement agency."  The letter warned that "[i]f you do not provide Experian with the required information

specified above, you will not have submitted a valid request to block information in your

personal credit report due to an identity theft and no information will be blocked."

Experian sent the dispute to Capital One, and Capital One verified the account as

accurate.  On September 13, 2019, Experian informed Plaintiff of her dispute results, indicating

that her Capital One account would remain on her Experian credit report.

### D.  Second Dispute Alleging Identity Theft

Plaintiff sent another dispute letter to Experian on September 26, 2019, similarly stating

"[a] few years ago I was the victim of [i]dentity [t]heft."  Attached to this dispute letter, Plaintiff

included the "Law Enforcement Report" section of her FTC Affidavit (along with 5 other pages

of the Affidavit, totaling 6 pages).  In that section, Plaintiff indicated that she had filed an

identity theft report with one Officer "Wilson" of the "S. Coatesville" police department.

Plaintiff further identified the relevant report number as 15-0049 and stated she originally filed

the report with Officer Wilson on January 8, 2015.  The Law Enforcement Report section did

not, however, include any officer's signature or badge number.

Experian again sent Plaintiff's dispute to Capital One, which verified the account as

being accurate.  On October 24, 2019, Experian mailed Plaintiff her dispute results, stating her

Capital One account would remain on her credit report and requesting "all pages of the identity

theft report, including validation that the report was filed with a federal, state or local law

enforcement agency."

### E.  Third Dispute Alleging Identity Theft

Plaintiff submitted yet another dispute letter on October 31, 2019—her third dispute that

mentioned identity theft.  The dispute attached five pages of the same FTC Affidavit, including

the Law Enforcement Report section.  Once again, Experian sent the dispute to Capital One,

which verified the account as accurate.  On November 27, 2019, Experian mailed Plaintiff a copy

of her dispute results, showing her Capital One account remained on her credit report.[2]

### F.  Experian's Identity Theft Report Policies

Experian asserts it was not required to block Plaintiff's Capital One account from its

reporting following the disputes described *supra* because Plaintiff's FTC Affidavit Law

Enforcement Report section was not signed by a law enforcement official.  Specifically,

Experian's policies provide: "Notarized or non-notarized FTC reports are not acceptable to use

as proof of identity theft to block items, unless the report contains a Law Enforcement Report

section that has been completed and signed by a police officer or law enforcement personnel."

The policy further states: "When the Law Enforcement Report section is completed and signed

by a police officer or law enforcement personnel, the Report is changed to a law enforcement ID

theft report which is acceptable proof of identity theft to block items disputed as fraud by

consumers."  Anna Simmons, an Experian witness, also confirmed in her deposition testimony

that Experian requires that the Law Enforcement Report section be signed by a law enforcement

official and, on that basis, Plaintiff's disputes were insufficient to trigger the blocking of her

Capital One account.

## II.   LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged

---

[2] Following the October 2019 dispute, Plaintiff disputed her Capital One account with Experian three more times. None of those subsequent disputes reference identity theft or attach an identity theft report.  Each simply describes the Capital One account, among others, as being "inaccurate" or as containing "erroneous information."  No further information regarding the alleged inaccuracy accompanies the three subsequent disputes.

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). The standard does not change when, as here, the parties have filed cross-motions for summary judgment: "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citation omitted). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

### III.   DISCUSSION

Congress enacted the FCRA to ensure that consumer reporting agencies like Experian follow "fair and equitable" procedures with regard to the "confidentiality, accuracy, relevancy, and proper utilization" of consumer credit information.  15 U.S.C. § 1681(b); *see Escobar v. Pa.*

*Higher Educ. Assistance Agency Servs., LLC*, 2018 WL 1740364, at *6 (E.D. Pa. Apr. 11, 2018); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 223 (3d Cir. 1997).[3]  The FCRA seeks to accomplish this goal by requiring consumer reporting agencies to "maintain reasonable procedures" to "assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  Additionally, the FCRA requires consumer reporting agencies to reinvestigate credit report information the consumer disputes as being inaccurate, 15 U.S.C. § 1681i, and, when certain preconditions are met, to block reporting of information the consumer claims was the result of identity theft, 15 U.S.C. § 1681c-2.

### A.  Statute of Limitations

As a preliminary but, as discussed *infra*, dispositive matter, Experian argues Plaintiff's FCRA claims are time-barred, stating that her claims accrued more than two years before the filing of her original Complaint on October 27, 2021.  The FCRA prescribes a two-year statute of limitations following "the date of discovery by the plaintiff of the violation that is the basis for such liability."  15 U.S.C. § 1681p.

Plaintiff brings three claims each pursuant to a separate section of the FCRA, each of which sets forth the circumstances under which—and when—liability arises.  *See Lawrence v. Trans Union LLC*, 296 F. Supp.2d 582, 587 (E.D. Pa. 2003).  Liability arises under Section 1681e(b) when a credit reporting agency issues an inaccurate consumer report.  *See* 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."); *Lawrence*, 296 F. Supp.2d at 587.  Liability arises

---

[3] There is no dispute that Plaintiff is a "consumer" and Experian is a "consumer reporting agency" as defined under the FCRA.  *See* 15 U.S.C. § 1681a.

under Section 1681i when the consumer reporting agency violates its duty under the FCRA to reinvestigate.  *See* 15 U.S.C.A. § 1681i(a)(1)(A) ("[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . the agency shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate. . . ."); *Lawrence*, 296 F. Supp.2d at 587.  Finally, liability arises under Section 1681c-2 when a consumer reporting agency does not block information that a consumer disputes as being the result of an identity theft.  *See* 15 U.S.C. § 1681c-2 ("[A] consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of [omitted items].").

With respect to Section 1681e(b), while Plaintiff does not point to a particular credit report containing the alleged inaccuracy, Plaintiff nonetheless discovered the allegedly erroneous information in her Experian credit report at least by the time she sent her August 20, 2019 dispute letter to Experian, wherein she first claimed her identity had been stolen—if not in May 2018 when she first disputed her Capital One account.  Accordingly, Plaintiff discovered the alleged inaccuracy in her credit report at least more than two months before the two-year statute of limitations period began on October 27, 2019 (*i.e.*, two years before Plaintiff filed her original Complaint).

With respect to Section 1681i, liability arose when Experian allegedly violated its duty to reinvestigate her identity-theft based dispute of August 2019.  Specifically, liability arose according to the timeline of reinvestigation set forth in Section 1681i, which states that the consumer reporting agency must reinvestigate the disputed item "before the end of the 30-day

period beginning on the date on which the agency receives the notice of the dispute from the

consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).  In other words, liability arises under Section

1681i thirty days after the consumer reporting agency receives notice of the disputed credit item

from the consumer.  *See Lawrence*, 296 F. Supp.2d at 587.  Here, Plaintiff sent her first identity-

theft based dispute to Experian on August 20, 2019, and Experian received it on August 25,

2019.  Accordingly, potential liability under Section 1681i arose on September 24, 2019—over a

month before the start of the two-year statute of limitations period.  Plaintiff would have

discovered any failure to reinvestigate even earlier, when Experian mailed Plaintiff a copy of her

dispute results showing her Capital One account remained on her credit report on September 13,

2019.

      With respect to Section 1681c-2, Experian declined to block the reporting of Plaintiff's

Capital One account after receiving her first identity-theft related dispute letter on August 25,

2019.  Under Section 1681c-2, assuming Plaintiff met the relevant criteria therein, Experian was

required to block the reporting of the information resulting from the alleged identity theft no later

than 4 business days after receipt of her dispute.  15 U.S.C. § 1681c-2(a).  Accordingly, potential

liability under Section 1681c-2 arose on August 29, 2019.  At the latest, Plaintiff would have

discovered that Experian declined to block the reporting of her Capital One account by

September 13, 2019, when it mailed her the copy of her dispute results, showing her Capital One

account remained on her credit report—over a month before the two-year statute of limitations

period began.

      In short, with respect to each of her claims Plaintiff discovered the "the violation that is

the basis for . . . liability" before the two-year limit imposed by Section 1681p, which, tracking

back from the filing of Plaintiff's initial Complaint, fell on October 27, 2019.

Nonetheless, Plaintiff argues that her subsequent disputes with Experian—in particular her October 31, 2019 dispute—restarted the statute of limitations clock with respect to her claims, despite the fact her August 2019 dispute was predicated on the same allegedly erroneous credit information as the subsequent disputes.

Whether a consumer's filing of subsequent credit disputes restarts the statute of limitations period set forth by Section 1681p is a question that has divided federal district courts. *See Escobar*, 2018 WL 1740364, at *5 (describing the split); *Owens v. TransUnion, LLC*, 2021 WL 5086370, at *7 (E.D. Tex. Aug. 30, 2021), *report and recommendation adopted as modified*, 2021 WL 4451890 (E.D. Tex. Sept. 29, 2021), *reconsideration denied*, 2021 WL 8441703 (E.D. Tex. Oct. 12, 2021).  The Third Circuit has not yet made any determination on the issue.  *See Ostrander v. Trans Union LLC*, 2021 WL 3271168, at *5 (E.D. Pa. July 30, 2021); *Escobar*, 2018 WL 1740364, at *4.

A number of district courts have examined this statute of limitations issue with respect to FCRA claims pursuant to 15 U.S.C. § 1681s-2(b), which, while not at issue here, sets forth duties for furnishers[4] of credit information to investigate notices of disputed consumer credit information.  *See, e.g.*, *Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 90 (3d Cir. 2017); *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014).  In this context, some district courts have concluded that subsequent credit report disputes, even when based on the same previously disputed information, nonetheless trigger the statutory duties imposed on furnishers and, accordingly, restart the statute of limitations period

---

[4] Furnishers of credit information are distinguished from consumer reporting agencies, like Experian here, under the FCRA.  *See Villalobos v. Citi Bank NA*, 2023 WL 3035315, at *5 (M.D. Pa. Feb. 2, 2023) (describing the difference between consumer reporting agencies and furnishers of information under the FCRA with respect to claims pursuant to 15 U.S.C. § 1681s-2(b)).

under Section 1681p.  *See, e.g.*, *Escobar*, 2018 WL 1740364, at \*4; *Wylie v. First Nat'l Bank Corp.*, 2019 WL 3006631, at \*4 (W.D. Pa. July 10, 2019); *Vasquez v. Bank of Am., N.A.*, 2015 WL 7075628, at \*2 (N.D. Cal. Nov. 13, 2015); *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp.3d 286, 290 (S.D.N.Y. 2014); *Broccuto v. Experian Info. Sols., Inc.*, 2008 WL 1969222, at \*4 (E.D. Va. May 6, 2008); *Maiteki v. Marten Transportation Ltd.*, 4 F. Supp.3d 1249, 1252-54 (D. Colo. 2013); *Young v. LVNV Funding LLC*, 2013 WL 4551722, at \*1 (E.D. Mo. Aug. 28, 2013); *Milgram v. Chase Bank USA, N.A.*, 2020 WL 409546, at \*4 (S.D. Fla. Jan. 25, 2020); *Thomas v. Wells Fargo Bank, N.A.*, 2018 WL 3719589, at \*7 (N.D. Ga. May 30, 2018), *report and recommendation adopted*, 2018 WL 3708441 (N.D. Ga. Aug. 3, 2018); *Larson v. Ford Credit*, 2007 WL 1875989, at \*2 (D. Minn. June 28, 2007).

At least one district court has extended this reasoning to Sections 1681e(b) and 1681i—which, unlike 15 U.S.C. § 1681s-2(b), are at issue here.  *See, e.g.*, *Owens*, 2021 WL 5086370, at \*7 (concluding that subsequent dispute letters renewed the statute of limitations period). Additionally, some courts have similarly determined that subsequent re-reporting of inaccurate information in a credit report by a consumer reporting agency constitutes a distinct violation to which a new statute of limitations period applies.  *Marcinski*, 36 F. Supp.3d at 29; *see, e.g.*, *Hyde v. Hibernia Nat. Bank in Jefferson Par.*, 861 F.2d 446, 450 (5th Cir. 1988).[5]

This line of cases reasons that each separate dispute triggers a furnisher or consumer reporting agency's statutory duties (*e.g.*, for a furnisher to investigate under Section 1681s-2(b) or a consumer reporting agency to investigate under Section 1681i), regardless of whether that

---

[5] While no court appears to have addressed the statute of limitations renewal issue specifically with respect to Section 1681c-2 claims, that section nonetheless invites the same question: whether each dispute triggering a duty to "block the reporting of any information . . . that the consumer identifies as information that resulted from an alleged identity theft" begins a new statute of limitations period even where the information identified in subsequent disputes is the same as in the initial dispute.  *See* 15 U.S.C. § 1681c-2.

same information has been previously disputed, and any alleged failure to fulfill those statutory

duties provides the basis for a new statute of limitations period to begin.  *See, e.g.*, *Escobar*,

2018 WL 1740364, at \*5; *Marcinski*, 36 F. Supp.3d at 290; *Wylie*, 2019 WL 3006631, at \*4;

*Owens*, 2021 WL 5086370, at \*9.

On the other side of the issue, a number of district courts have reached the opposite

conclusion, namely that the mere filing of new disputes does not restart the statute of limitations

period set forth in Section 1681p where those subsequent disputes concern the same alleged

inaccuracies or errors underlying a prior dispute.  *See Bittick v. Experian Info. Sols., Inc.*, 419 F.

Supp.2d 917, 919 (N.D. Tex. 2006) (concluding additional dispute to credit reporting agency did

not "restart the limitations clock" with respect to Section 1681b, 1681e, and 1681i claims);

*Hatten v. Experian Info. Sols., Inc.*, 2013 WL 5179190, at \*4 (E.D. Mich. Sept. 12, 2013)

(similar with respect to Section 1681s-2(b) claim); *Hancock v. Charter One Mortg.*, 2008 WL

2246042, at \*2 (E.D. Mich. May 30, 2008) (similar with respect to Section 1681i and Section

1681s-2(b) claims); *Blackwell v. Cap. One Bank*, 2008 WL 793476, at \*3 (S.D. Ga. Mar. 25,

2008) (similar with respect to Section 1681s-2(b) claim).

This separate line of cases, following *Bittick*, reasons that allowing plaintiffs to renew the

statute of limitations period simply by filing new disputes with furnishers or consumer reporting

agencies, even where the disputes are based solely on previously disputed information, in effect

renders the FCRA's statute of limitations period meaningless.  As one court put it: "To allow

[plaintiff's] claims to go forward based upon the subsequently submitted complaints would allow

plaintiffs to indefinitely extend the limitations period and render it a nullity.  The Court will not

read the statute so as to provide such an anomalous result."  *Blackwell*, 2008 WL 793476, at \*3;

*see also Hancock*, 2008 WL 2246042, at \*2 ("The [plaintiff's] subsequent dispute letters

12

regarding the same erroneous information do not restart of the statute of limitations clock.  A

perpetual statute of limitations not intended by the FCRA would be the result if the Court

adopted the [plaintiff's] argument."); *Bittick*, 419 F. Supp.2d at 919 ("Th[e] additional report

cannot restart the limitations clock.  To do so would allow plaintiffs to indefinitely extend the

limitations period by simply sending another complaint letter to the credit reporting agency.").

At least under the facts of this case, the reasoning of the *Bittick* line of cases is more

persuasive.  Plaintiff's three identity-theft related disputes to Experian between August and

October 2019 were all based on the same information, namely the alleged theft of Plaintiff's

credit card in 2015 and fraudulent charges incurred on her Capital One account thereafter before

the account was charged off in 2016.  None of the disputes following that of August 2019

identifies any additional inaccuracies or errors in Experian's reporting of her Capital One

account.  In other words, all of Plaintiff's disputes falling within the two-year statute of

limitations period—including the October 2019 dispute on which she rests her argument—are

based on the "same original incident."  *Hatten*, 2013 WL 5179190, at *4.  Allowing Plaintiff to

restart the statute of limitations period by resubmitting identical disputes would, under these

circumstances, render the FCRA's statute of limitations "a nullity."  *Blackwell*, 2008 WL

793476, at *3; *cf. Anderson v. Equifax Info. Servs. LLC*, 292 F. Supp.3d 1211, 1219 (D. Kan.

2017) (concluding it was unnecessary to determine whether to adopt the reasoning of *Bittick*

where plaintiff alleged new transactions on her credit report "distinct from the transactions . . .

complained of" in prior disputes).

Accordingly, Plaintiff's disputes subsequent to her August 2019 dispute letter do not

restart the statute of limitations period, and Plaintiff's FCRA claims, for the reasons set forth

*supra*, are time-barred.[6]

An appropriate order follows.

BY THE COURT:

/s/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**

---

[6] Since Defendant's statute of limitations defense is dispositive, there is no need to address Defendant's alternative defense of laches.